IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDREA THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0115-WS-N |
| | ) |
| PORT II SEAFOOD & OYSTER BAR, | ) |
| INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on defendants' filing styled "Motion to Dismiss as to Frangelica Turner and Motion to Compel Arbitration" (doc 29). The Motion has been briefed and is now ripe for disposition.

**I.    Background.**

This case is an opt-in collective action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). In the Complaint (doc. 1), named plaintiff, Andrea Thomas, alleges that Mikee's Seafood (a restaurant alleged to be owned and/or operated by defendants, Port II Seafood & Oyster Bar, Inc., and Edwin Spence, Jr.) in Baldwin County, Alabama requires its servers to participate in an invalid tip pool, to perform uncompensated pre-shift work, to wait without compensation during their scheduled shifts until they have customers to serve, to perform uncompensated post-shift work, and to spend in excess of 20% of their working time performing non-tip producing activities. The Complaint further alleges that defendants altered servers' time records to avoid having to pay minimum wage and overtime, that they instructed on-duty servers to clock out during slow times and wait until customers arrived before clocking in again, and that they "rolled back" employees' recorded hours worked to avoid exposure to overtime. Based on these and other allegations, Thomas brings FLSA claims for herself, as well as on behalf of other similarly situated servers who elect to opt in, to recover misappropriated tip moneys, unpaid wages and overtime compensation.

Just two days after the Complaint was filed, Thomas submitted her First Notice of Filing Consents by Opt-In Plaintiffs (doc. 4). One putative opt-in plaintiff identified in that Notice was Frangelica Turner, who executed a form reflecting her consent to become a party plaintiff in this action. It appears undisputed, however, that Turner had previously affixed her electronic signature to an arbitration agreement (the "Agreement") on April 25, 2015, when she started working at Mikee's Seafood. (Brier Aff. (doc. 30, Exh. A), ¶ 3.) In relevant part, that Agreement provides that "Company and Individual agree to resolve any and all disputes or claims each may have against the other which relate in any manner whatsoever as to Individual's employment … by binding arbitration pursuant to the Employment Rules and Procedures of National Arbitration and Mediation ('NAM')." (Brier Aff., Binding Arbitration Agreement, at 1.) The Agreement elaborates that "[d]isputes related to employment include, but are not limited to, claims or charges based upon federal or state statutes, including, but not limited to, … the Fair Labor Standards Act or other wage statutes." (*Id.*) By its terms, the Agreement "mutually binds Individual and Company to arbitrate any and all disputes between them," including "any related claims he/she individually may have arising out of or in the context of his/her employment relationship against any manager or owner of the Company." (*Id.*)

**II.    Analysis.**

The gravamen of defendants' Motion to Dismiss and to Compel Arbitration is that opt-in plaintiff Frangelica Turner is obligated by the Agreement to resolve her FLSA dispute with defendants via the arbitration mechanism, rather than through these court proceedings. Defendants now seek to enforce the plain terms of that Agreement to stymie Turner's efforts to join this lawsuit as an opt-in plaintiff. On that basis, Port II Seafood and Spence move the Court to dismiss Turner's claims and to compel arbitration of same. Plaintiff opposes the Motion.

   *A.    Applicable Legal Standard.*

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate, such as that signed by Turner, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In conformity with the FAA, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (citations omitted). "Arbitration is a matter of contract" and "interpretation of an arbitration agreement is generally a matter of state law." *In re Checking Account Overdraft*

*Litigation MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (citation and internal quotation marks omitted).

Significantly, the FAA creates a strong federal policy favoring enforcement of arbitration agreements. Indeed, "federal courts interpret arbitration clauses broadly where possible," such that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) (citations omitted); *see also Inetianbor*, 768 F.3d at 1353 ("When interpreting an arbitration agreement, due regard must be given to the federal policy favoring arbitration, and ambiguities to the scope of the arbitration clause itself resolved in favor of arbitration.") (citation and internal quotation marks omitted). As the Eleventh Circuit has observed, the FAA "sets forth a clear presumption – 'a national policy' – in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). Of course, "the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

  **B. *Plaintiff's Objections to Enforcement of Turner's Agreement.***

In support of their Motion to Dismiss, defendants identify specific language in the Agreement wherein Turner agreed to resolve any employment-related disputes with Port II or its managers or owners via binding arbitration. Defendants also cite the above-cited strands of authority emphasizing the broad judicial construction and rigorous enforcement of agreements to arbitrate pursuant to the FAA, as well as the national policy in favor of arbitration. Turner's claims against Port II and Spence appear to lie firmly within the ambit of the arbitration agreement she executed at the outset of her employment at Mikee's Seafood.

Nonetheless, plaintiff opposes defendants' request to dismiss or to compel arbitration of Turner's claims. Plaintiff's sole argument in opposition to the Motion is that a particular term of the Agreement "violates the National Labor Relations Act." (Doc. 33, at 2.) In support of her position, plaintiff seizes on language in the Agreement specifying that Turner waived her "right to commence, be a party to, or act as a class member in, any class or collective action in any court action against the other party relating to employment issues," and that Turner further

waived her "right to commence or be a party to any group, class or collective action claim in arbitration or any other forum."  (Brier Aff., Binding Arbitration Agreement, at 2.)  Citing Seventh Circuit authority of very recent vintage, plaintiff maintains that participation in collective or class legal proceedings constitutes "concerted activity" under Section 7 of the National Labor Relations Act ("NLRA"), and that the Agreement's restrictions on Turner's ability to engage in such Section 7 concerted activities are unenforceable as a matter of law.[1]

As defendants point out, the Seventh Circuit's treatment of this issue appears to be anomalous, or at least firmly in the minority, among appellate courts that have considered it. *See, e.g., D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 362 (5th Cir. 2013) ("Because the Board's interpretation does not fall within the FAA's 'saving clause,' and because the NLRA does not contain a congressional command exempting the statute from application of the FAA, the Mutual Arbitration Agreement must be enforced according to its terms. … Every one of our sister circuits to consider the issue has either suggested or expressly stated that they would not defer to the NLRB's rationale, and held arbitration agreements containing class waivers enforceable.").[2]

---

[1] In *Lewis v. Epic Systems Corp.*, --- F.3d ----, 2016 WL 3029464 (7th Cir. May 26, 2016), the defendant required its employees, as a condition of continued employment, to sign an arbitration agreement that contained a waiver of class and collective claims.  The plaintiff executed that agreement, then later sued his employer in federal court for violations of the FLSA in a putative collective action.  When he did so, the employer sought to enforce the collective-action waiver and compel individual arbitration.  The Seventh Circuit opined that "insofar as it prohibits collective action, [the employer]'s arbitration provision violates Sections 7 and 8 of the NLRA." *Id.* at *5.  The *Lewis* court found that nothing in the FAA saved that provision, reasoning that "[b]ecause the provision at issue is unlawful under Section 7 of the NLRA, it is illegal, and meets the criteria of the FAA's saving clause for nonenforcement." *Id.* at *6.  On that basis, the Seventh Circuit concluded that the arbitration provision's ban on the employee's ability to seek class, collective or representative remedies to wage-and-hour disputes was illegal and unenforceable, and declined to compel individual arbitration.

[2] *See also Cellular Sales of Missouri, LLC v. National Labor Relations Board*, --- F.3d ----, 2016 WL 3093363, *2 (8th Cir. June 2, 2016) ("we conclude that Cellular Sales did not violate section 8(a)(1) [of the NLRA] by requiring its employees to enter into an arbitration agreement that included a waiver of class or collective actions in all forums to resolve employment-related disputes"); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296-97 & n.8 (2nd Cir. 2013) (observing that "every Court of Appeals to have considered this issue has concluded that the FLSA does not preclude the waiver of collective action claims" and declining to adopt the NLRB's conclusion "that a waiver of the right to pursue a FLSA claim collectively in any forum violates the" NLRA); *Siy v. CashCall, Inc.*, 2014 WL 37879, *15 (D. Nev. Jan. 6, 2014) ("In short, the overwhelming weight of authority supports Defendant's position that an (Continued)

Based on the Court's reading of extant authorities, it appears unlikely that the Eleventh Circuit would diverge from the prevailing consensus view by deeming FLSA collective action waivers in arbitration agreements to violate the NLRA and to be unenforceable under the FAA.

But plaintiff's broadside attack on the collective action waiver in the Agreement would falter even if the Seventh Circuit's position were adopted here. Ultimately, the collective action waiver is superfluous to the defendants' Motion to Dismiss, which is animated by the Agreement's terms providing that all disputes between Turner and defendants relating to her employment (including specifically her individual FLSA claims) will be resolved by binding arbitration. Even if the collective action waiver were struck down for violating the NLRA, as plaintiff advocates, Turner's claims would remain subject to arbitration because the clear terms of the Agreement oblige her to submit all employment-related disputes with Port II and Spence to arbitration.

Stated differently, suppose plaintiff were correct that the collective action waiver in the Agreement is illegal and unenforceable. The offending clause would then be severable under the terms of the Agreement. It is well settled that if portions of an arbitration agreement "are not enforceable, then the court must determine whether the unenforceable provisions are severable. Severability is decided as a matter of state law." *Terminix Int'l Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1331 (11th Cir. 2005). On its face, the Agreement includes a severability provision specifying as follows: "If any provision of this Agreement is determined to

---

arbitration agreement containing a collective action waiver of FLSA claims is valid and enforceable under the FAA."). The Eleventh Circuit has not definitively adjudicated this question, but has observed that "all of the circuits to address this issue have concluded that § 16(b) [of the FLSA] does not provide for a non-waivable, substantive right to bring a collective action." *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1336 (11th Cir. 2014); *see generally Curbelo v. Autonation Ben. Co.*, 2015 WL 667655, *4 (S.D. Fla. Feb. 17, 2015) ("Plaintiff's arbitrability argument regarding her waiver, through the Arbitration Agreement, of her collective action rights under the FLSA is directly contrary to Eleventh Circuit precedent."); *De Oliveira v. Citicorp North America, Inc.*, 2012 WL 1831230, *1 (M.D. Fla. May 18, 2012) ("The Court agrees with Defendants that the law of the Eleventh Circuit upholds the enforcement of arbitration agreements waiving an individual's right to pursue collective claims under the FLSA."); *Zekri v. Macy's Retail Holdings, Inc.*, 2010 WL 4660013, *1 (N.D. Ga. Nov. 4, 2010) ("Eleventh Circuit case law also supports the conclusion that arbitration agreements may validly require waiver of statutory rights to bring class or collective actions.").

be invalid or unenforceable, it is agreed that the remainder of this Agreement shall remain in full force and effect." (Brier Aff., Binding Arbitration Agreement, at 3.) In general, "[w]here an arbitration agreement contains a severability provision, a court may choose to excise any invalid provision of the underlying contract." *Alcalde v. Carnival Cruise Lines*, 798 F. Supp.2d 1314, 1320-21 (S.D. Fla. 2011) (citation omitted). Moreover, "Alabama law favors severability, and it gives full force and effect to severability clauses." *Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d 1024, 1032 (11th Cir. 2003).[3]

The point is straightforward: Even if plaintiff were correct (which is far from clear and, indeed, appears unlikely) that the collective action waiver in the arbitration agreement signed by Turner is unenforceable as violative of the NLRA, the severability clause in that agreement would be applied to excise that waiver, leaving the remainder of the agreement intact. *See Anders*, 346 F.3d at 1032 ("In view of the clear and settled Alabama law favoring severability, as well as the FAA's requirement that arbitration agreements be treated no less favorably than other contracts under state law, the severability clause in this case should be applied to prevent any invalid provisions from destroying the entire agreement to arbitrate."). After severing the collective action waiver, Turner's Agreement would still retain her assent to submit her employment-related claims under the FLSA to binding arbitration. Plaintiff comes forward with neither argument nor authority under which an employee's agreement to submit her individual FLSA claims to arbitration would violate the NLRA's protections for concerted activities. Accordingly, the Court will enforce those provisions of the Agreement and compel the arbitration of opt-in plaintiff Turner's individual claims.

### C. *Dismissal or Stay of Turner's Claims.*

The Court will not, however, grant defendants' request for dismissal of Turner's claims. The FAA provides that when a court determines an issue is referable to arbitration under an

---

[3] *See also Ex parte Celtic Life Ins. Co.*, 834 So.2d 766, 769 (Ala. 2002) (recognizing that "this Court has frequently excised void or illegal provisions in a contract, even in the absence of a severability clause, and enforced the remainder of the contract"); *Bodine v. Cook's Pest Control, Inc.*, 2015 WL 3796493, *4 (N.D. Ala. June 18, 2015) ("[I]n view of the clear and well-settled Alabama law favoring severability, as well as the FAA's requirement that arbitration agreements be treated no less favorably than other contracts under state law, the severability clause in this case should be applied to prevent any invalid provisions from destroying the entire agreement to arbitrate.").

arbitration agreement, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had …." 9 U.S.C. § 3. Furthermore, as the undersigned has noted previously, "[w]here a plaintiff initiates litigation without satisfying arbitration requirements, courts routinely stay rather than dismiss the proceedings to allow for implementation of the agreed-upon dispute resolution mechanism." *Campbell v. Pilot Catastrophe Services, Inc.*, 2010 WL 3306935, *7 (S.D. Ala. Aug. 19, 2010) (collecting cases). Defendants have not articulated any reason why dismissal might be more appropriate than a stay here. As such, Turner's putative opt-in claims will be stayed, not dismissed, pending the outcome of arbitration.

**III.   Conclusion.**

For the foregoing reasons, it is **ordered** as follows:

1. Defendants' Motion to Dismiss as to Frangelica Turner and Motion to Compel Arbitration (doc. 29) is **granted in part, and denied in part**;
2. The Motion to Compel Arbitration is **granted**, and the claims of opt-in plaintiff Frangelica Turner are hereby referred to arbitration in accordance with the terms of the Binding Arbitration Agreement she signed on April 25, 2015;
3. The Motion to Dismiss is **denied**, and all claims brought in this litigation by opt-in plaintiff Frangelica Turner are **stayed pending arbitration**;
4. Notwithstanding this determination, the Court retains jurisdiction to confirm or vacate any resulting arbitration award under 9 U.S.C. §§ 9-10. *See TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998). To enable the Court to monitor Turner's claims as they progress through the arbitration process, the parties are **ordered** to file, on or before the **first Thursday of each month**, beginning in **August 2016**, a joint written report reflecting the status of the arbitration proceedings; and
5. This litigation shall move forward as to the claims of all other original and opt-in plaintiffs.

DONE and ORDERED this 8th day of July, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE