IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDREA THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0115-WS-N |
| | ) |
| PORT II SEAFOOD & OYSTER BAR, | ) |
| INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on the parties' Joint Motion to Approve Settlement Agreement (doc. 47).

**I.    Procedural History.**

Plaintiff, Andrea Thomas, brought this opt-in collective action against defendants, Port II Seafood & Oyster Bar, Inc., d/b/a Mikee's Seafood, and Edwin Spence, Jr., alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). According to the well-pleaded factual allegations of the Complaint, Thomas was employed by defendants as a server at Mikee's Seafood restaurant from February 2014 through June 2014. In the Complaint, Thomas alleged that defendants violated the FLSA's minimum wage and overtime provisions by (i) operating an invalid tip pool that obliged tipped employees such as Thomas to share tips with ineligible, non-tipped employees; (ii) requiring servers like Thomas to spend more than 20% of their time performing non-tipped duties at the reduced minimum wage of $2.13/hour; and (iii) requiring servers like Thomas to perform off-the-clock labor. The Complaint alleged that defendants' violations of the FLSA were willful, and Thomas sought recovery of unpaid minimum and overtime wages, plus liquidated damages, nominal damages, special damages, compensatory damages, back pay, attorney's fees and costs.

In addition to Thomas, this case includes three opt-in plaintiffs, to-wit: Cherry Marler, Corina Woodward, and Frangelica Turner (collectively, the "Opt-In Plaintiffs"). (*See* docs. 4, 22.) Their claims appear identical to Thomas's. In particular, all three Opt-In Plaintiffs maintain

that defendants violated the FLSA by requiring them to work off-the-clock until customers were seated at their assigned tables, requiring them to spend more than 20% of their time performing non-tipped duties at the reduced minimum wage, and requiring them to contribute a portion of their tips to non-tipped kitchen staff in accordance with defendants' invalid tip pool. (*See* doc. 7, Exhs. C, D; doc. 47, at ¶¶ 15-23.)[1]

For their part, defendants deny plaintiffs' claims. As a factual matter, defendants dispute that Thomas or the Opt-In Plaintiffs devoted more than 20% of their time to non-tip producing activities. Defendants further maintain that their tip pool arrangement was valid and compliant with FLSA standards, and that only qualified employees participated in same. Defendants also raise the additional defenses that certain of plaintiffs' claims are barred by the applicable statute of limitations, and that any violations were made in good faith. (Doc. 47, at 11.)[2] Additionally, all parties agree that fact-intensive questions relating to the validity of the Mikee's Seafood tip pool, whether any FLSA violations by defendants were willful, and whether defendants acted in good faith would consume significant resources in this litigation, would require summary judgment filings and ultimately a trial, and would significantly delay any recovery that plaintiffs might ultimately be awarded.

To their credit, the parties have worked diligently following the filing of the Complaint to explore whether early, amicable resolution of this matter is possible. Defendants produced substantial records (including payroll summaries and pay stubs) to facilitate plaintiffs' evaluation of the respective claims and defenses. Furthermore, the parties contacted Magistrate Judge Nelson in early August 2016 to request a judicial settlement conference, which she conducted on

---

[1] With respect to opt-in plaintiff Frangelica Turner, this Court entered an Order (doc. 36) on July 8, 2016, granting defendants' Motion to Compel Arbitration (doc. 29) of Turner's claims in accordance with the terms of the Binding Arbitration Agreement she signed on April 15, 2016. Notwithstanding the July 8 Order, the parties have agreed to settle Turner's claims as well as those of Thomas and the other Opt-In Plaintiffs, without prejudice to defendants' right to require Turner to litigate her claim via binding arbitration in the event the settlement is not approved. (*See* doc. 47, at 9, n.1.)

[2] It is unclear from the Joint Motion to Approve Settlement Agreement what defendants' position is on plaintiffs' claims relating to off-the-clock work. The parties do state, however, that they calculated back wages for off-the-clock labor "based on the difference of estimated arrival times stated in each Plaintiff's declaration and the recorded start time in Defendants' time punch records." (Doc. 47, at 12.)

August 25, 2016.  (*See* doc. 42.)  That settlement conference resulted in the successful resolution of all claims asserted herein by both Thomas and the Opt-In Plaintiffs, conditioned on approval by this Court.  As required by applicable law, the parties followed up by submitting a detailed Joint Motion to Approve Settlement Agreement, which is now ripe.

II.     **Analysis.**

    A.     ***Statutory Requirement of Judicial Approval of FLSA Settlements.***

In the overwhelming majority of civil actions brought in federal court, settlements are not subject to judicial oversight, scrutiny or approval.  However, FLSA settlements must be handled differently.  *See, e.g., Moreno v. Regions Bank*, 729 F. Supp.2d 1346, 1348 (M.D. Fla. 2010) ("Settlement of an action under the FLSA stands distinctly outside the practice common to, and accepted in, other civil actions.").  This is because "Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees."  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).  "Despite this general rule, an employer and an employee may settle a private FLSA suit under the supervision of the district court" where there is a "bona fide dispute over FLSA coverage."  *Hogan v. Allstate Beverage Co.*, 821 F. Supp.2d 1274, 1281 (M.D. Ala. 2011).  The mechanics of such a settlement are that "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  *Lynn's Food*, 679 F.2d at 1353.

Where, as here, a district court is asked to approve an FLSA settlement between private litigants, the court's responsibility is to ascertain whether the parties' negotiated resolution comports with the statute's terms.  *See, e.g., Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013) ("[t]he purposes of the FLSA are undermined whenever an employer is allowed to escape liability for violations of the statute"); *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp.2d 618, 622-23 (E.D. Va. 2011) ("the reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes").  A settlement may be approved when the court confirms that "employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy."  *Hogan*, 821 F. Supp.2d at 1282.  Thus, the touchstone of the inquiry is whether the proposed settlement "constitutes a fair and reasonable compromise of a

*bona fide* FLSA dispute." *Crabtree v. Volkert, Inc.*, 2013 WL 593500, *3 (S.D. Ala. Feb. 14, 2013).

The caveat to such judicial oversight is that "[i]n reviewing FLSA settlements under *Lynn's Food*, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Parker v. Chuck Stevens Chevrolet of Atmore, Inc.,* 2013 WL 3818886, *2 (S.D. Ala. July 23, 2013) (citations and internal quotation marks omitted); *see also Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7307626, *2 (N.D. Ga. Feb. 11, 2011) (recognizing "strong presumption" that FLSA settlements are fair and reasonable). Such deference is warranted because "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" and "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp.2d 1222, 1227 (M.D. Fla. 2009).

### B.     *Fairness/Reasonableness of Payments to Plaintiffs.*

The Joint Motion reflects that this action does, indeed, involve a *bona fide* FLSA dispute. Among other areas of divergence, there appears to be a good-faith dispute between the parties as to whether the Mikee's Seafood tip pool was valid, whether the kitchen staff members participating in such tip pool were eligible to do so under FLSA standards, whether any violations by defendants were willful, and whether defendants operated in good faith. All information before the Court at this time supports a determination that plaintiffs' FLSA claims were actually, reasonably in dispute, thereby giving rise to the possibility of a *Lynn's Food* compromise settlement of those disputed claims.

Against this backdrop of litigation uncertainty, the parties negotiated a settlement to resolve the FLSA claims of Thomas and the Opt-In Plaintiffs against defendants in their entirety. To achieve this result, the parties calculated the total number of regular and overtime hours for which Thomas and the Opt-In Plaintiffs had been paid at the reduced minimum wage of $2.13 per hour in reliance on the FLSA tip credit provision. The parties then multiplied those hours by the relevant "tip differential" rate (*i.e.*, the difference between the $7.25 minimum wage and the $2.13 tip credit minimum wage) for regular hours, with an additional 1.5 times multiplication of the corresponding rates for overtime hours. Through this methodology, the parties calculated the total differential between the amounts that Thomas and the Opt-In Plaintiffs were actually paid under defendants' tip credit arrangement, and the amounts they would have been paid if

plaintiffs were paid at the prevailing $7.25 minimum wage (*i.e.*, the amounts they would have been owed if the Mikee's Seafood tip pool were deemed invalid, thereby depriving defendants of eligibility for the $2.13 tip credit minimum wage). With respect to the "off-the-clock" claims, the parties calculated additional back wages using the difference between each plaintiff's estimated arrival times at work and their recorded start times in defendants' time punch records. Those resulting figures were multiplied by $7.25 per hour.

In calculating settlement amounts for both the "tip credit" claims and the "off-the-clock" claims, the parties utilized a two-year backpay period, and allotted a sum equal to the two-year backpay amount for each plaintiff in the form of liquidated damages.[3] Thus, the settlement was predicated on the a "two years liquidated damages" calculation, such that the settlement amounts represented 100 cents on the dollar that each plaintiff would have received at trial had plaintiffs successfully proven their claims in full and defendants failed to establish a "good faith" defense, thereby giving rise to an award of liquidated damages. Plaintiffs' sole compromise for settlement purposes was to forego the third year of damages, which they could have recovered at trial only if they had proven that defendants' violations were willful. (Doc. 47, at 13.)

Pursuant to the parties' agreement, then, plaintiffs are being paid all monies allegedly due to them, including 100% of their alleged unpaid wages and 100% of their alleged unpaid liquidated damages for the FLSA two-year limitations period that attaches in the absence of willful violations. In light of that fact, coupled with plaintiffs' counsel's representations that plaintiffs have consulted with their experienced counsel, that plaintiffs fully understand the agreement, and that plaintiffs have entered into the agreement knowingly and voluntarily, the Court has no qualms or reservations whatsoever about accepting that portion of the settlement as fair and reasonable to plaintiffs. After all, the settlement results in plaintiffs receiving all of the funds they claim defendants owe them for a two-year FLSA limitations period, such that their

---

[3] In specific terms, the agreed-upon payments for each plaintiff calculated via this methodology are as follows: (i) to plaintiff Thomas, $2,022.72 in backpay and an additional $2,022.72 in liquidated damages, for a total payment of $4,045.44; (ii) to opt-in plaintiff Marler, $1,546.03 in backpay and an additional $1,546.03 in liquidated damages, for a total payment of $3,092.06; (iii) to opt-in plaintiff Turner, $1,360.71 in backpay and an additional $1,360.71 in liquidated damages, for a total payment of $2,721.42; and (iv) to opt-in plaintiff Woodward, $1,584.51 in backpay and an additional $1,584.51 in liquidated damages, for a total payment of $3,169.02. (Doc. 47, at 13.)

FLSA claims are effectively being paid in full. The parties' decision to limit the damages period to two years, rather than three, is also fair and reasonable, given the disputed nature of plaintiffs' claims, the potential that plaintiffs might have recovered nothing at trial, and the difficulties plaintiffs would have encountered in trying to prove the willfulness of any violations so as to unlock the third year of FLSA liability. Accordingly, the Court is satisfied that the parties' agreed-upon settlement amount is a fair and reasonable resolution of a *bona fide* dispute as to Thomas's and the Opt-In Plaintiffs' FLSA causes of action, for purposes of *Lynn's Food* and its progeny. Again, there are no uncontested wages remaining unpaid (because the settlement pays all plaintiffs 100 cents on the dollar for their claimed back wages) for the two-year limitations period, and plaintiffs are plainly receiving a fair deal as to all claims that are the subject of *bona fide* controversy.

      C.    *Attorney's Fees.*

In addition to reviewing the fairness and reasonableness of the settlement payment to plaintiffs, the Court must also consider the reasonableness of the negotiated attorney's fee component of an FLSA settlement. *See, e.g., Crabtree v. Volkert, Inc.*, 2013 WL 593500, *7 (S.D. Ala. Feb. 14, 2013) ("a court reviewing an FLSA settlement must review the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement") (citation and internal quotation marks omitted).

Here, the parties represent that they negotiated the attorney's fee portion of the settlement only after coming to an agreement on backpay and liquidated damages figures. (Doc. 47, at 14 ("The parties discussed attorneys' fees and costs only after coming to an agreement that fully compensated the Plaintiffs' claims under the two-year statute of limitations.").) As such, the Court has no reason to believe that the fee portion of the settlement has been at the expense of statutory compensation owed to plaintiffs. In other words, the proposed settlement described in the Joint Motion is not a zero-sum game in which each settlement dollar allocated to plaintiffs' lawyers results in a dollar of FLSA compensation being taken from plaintiffs' pockets. Thus, the concerns animating judicial review of the attorney's fee portion of FLSA settlements are not

implicated here.[4]  At any rate, the Court has reviewed plaintiffs' counsel's time records appended to the Joint Motion as Exhibit A.  Such review confirms that the proposed $18,000 payment to plaintiffs' counsel appears fair and reasonable under the circumstances here, in light of the costs expended, work performed, hours spent, and hourly rates awardable, in connection with plaintiffs' counsel's efforts preparing and litigating this case, studying defendants' records, compiling individualized damages calculations, and negotiating a favorable settlement.

In short, the Court is satisfied that the proposed attorney's fee payment to plaintiffs' counsel constitutes adequate, reasonable compensation and that plaintiffs' recovery in this matter was neither tainted nor otherwise adversely affected by the fee award negotiated by their attorneys.

**III.   Conclusion.**

For all of the foregoing reasons, it is **ordered** that the parties' Joint Motion to Approve Settlement Agreement (doc. 47) is **granted**.  The settlement of plaintiffs' FLSA claims is **approved** as fair and reasonable pursuant to the analysis required by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).  In accordance with the requirements of *Lynn's Food*, a stipulated final judgment will be entered.  *See Nall*, 723 F.3d at 1308 ("The agreement between Nall and Malik was not made under the supervision of the Secretary of Labor, so ***it is valid only if the district court entered a 'stipulated judgment' approving it***.") (emphasis added).

DONE and ORDERED this 29th day of September, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4]     *See, e.g., Bonetti*, 715 F. Supp.2d at 1228 (deeming scrutiny of reasonableness of attorney's fee payment in FLSA settlement unnecessary unless "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney"); *Wing v. Plann B Corp.*, 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) (declining to assess reasonableness of attorney's fee payment in FLSA settlement where "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel").